Mark F. Anderson (SBN 44787)
Anderson, Ogilvie & Brewer LLP
1736 Stockton Street, Ground Floor
San Francisco, CA 94133
Phone: (415) 651-1951
mark@aoblawyers.com

Attorney for Plaintiff Varinder Sudhir

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Varinder Sudhir, | Case No. 3:16-CV-06088 WHA |
| Plaintiff, | FIRST AMENDED COMPLAINT AND |
| v. | SUPPLEMENTAL COMPLAINT |
| PHH Mortgage Corporation, | |
| Defendant. | Jury Trial Demanded |

**Preliminary Statement**

1.      This is an action for damages brought by an individual consumer Varinder Sudhir against defendant PHH Mortgage Corporation for violation of the Consumer Credit Reporting Agencies Act, Civil Code Section 1785.25(a), the Fair Credit Reporting Act, 15 USC § 1681(a) *et seq*. and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA").

**The Parties**

2.       Plaintiff is an individual who resides in Contra Costa County.

3.      Defendant PHH Mortgage Corporation ("PHH") is a corporation

organized under the laws of the State of New Jersey. It has its principal place of business in Mt Laurel, New Jersey.

### Jurisdiction & Venue

4.     This Court has jurisdiction based on diversity of the parties pursuant to 28 USC. § 1332(a) and by federal question jurisdiction pursuant to 15 USC §1681p.

5.     The court has supplemental jurisdiction over the state law claims pursuant to 15 USC § 1367.

6.     Venue is proper as the alleged violations arose in this district.

### Description of the Case

7.     Plaintiff Sudhir owns and rents houses to tenants as investments. This complaint concerns two mortgage loans that are secured by first deeds of trust on houses are located on Detroit Avenue in Concord, California.

8.     At all relevant times, plaintiff paid the fire and casualty insurance and property taxes due on the two houses in full on a timely basis.

9.     At all relevant times, plaintiff paid PHH the exact amount that was due it on the loans on the properties on a timely basis.

10.     PHH purchased the mortgages from the prior mortgage loan servicer on May 14, 2014. At that time, plaintiff had hazard insurance policies in effect through December 23, 2014. Plaintiff renewed the insurance with American Security Insurance Company for the period December 23, 2014, through December 23, 2015. The policies listed PHH Mortgage as its named insured mortgagee.

11.    On December 24, 2014, and on January 23, 2015, PHH sent plaintiff notices that the hazard insurance on the two properties had expired, which was not accurate. on January 18, 2015, plaintiff sent PHH copies of the declaration pages of the insurance policies by fax proving he had adequate insurance on the properties.

12.    Beginning in January 2015, plaintiff provided proof to PHH that he maintained adequate insurance on the properties.  From time to time, PHH acknowledged receipt of the proof of insurance. Nevertheless, PHH acted as if it never received the proof of insurance because, on March 4, 2015, PHH sent plaintiff a notice it had placed forced placed insurance on the properties from a third party, opened an unauthorized escrow account, charged plaintiff for the cost of the premiums it paid for the insurance, and repeatedly dunned plaintiff to pay to pay into the escrow account. On May 19, 2015, plaintiff's insurance agent sent PHH proof of insurance on the policies. PHH finally canceled the forced place insurance on May 20, 2015.

13.    Nevertheless, on May 22, 2015, PHH sent plaintiff a dunning letter stating it not had received the current month's mortgage payment, which was not accurate. Plaintiff had made the payment before the end of the grace period, the 15th of the month.

14.    On May 22, 2015, plaintiff sent PHH a letter (by certified mail) informing PHH that he had paid the property taxes and had paid for insurance on the properties.

15.    Even though plaintiff repeatedly sent PHH proof he had paid the insurance and property taxes, on July 7, 2015, PHH sent plaintiff a letter saying he was 36 or more days past due on his mortgage payment on one of his properties.

16.    On July 13, 2015, plaintiff responded with a letter stating he was never late in making his payments and that he had paid the property taxes and insurance premiums. At this point, plaintiff discovered that PHH had reported to the credit reporting agencies that he was 30 days late in making his mortgage payments, which was not accurate. In his July 13 letter, plaintiff also asked PHH to delete the late payment reports.

17.    On July 24, 2015, PHH sent plaintiff a letter stating it was instructing the credit reporting agencies to delete the late payment reports.

18.    On September 1, 2015, PHH sent letters to plaintiff with respect to both properties stating he was 31 or more days late making the mortgage payments on the loans on the properties, which not accurate. All payments due under the promissory notes had been made on time.

19.    On October 14, 2015, PHH inexplicably sent plaintiff checks in the amount of the mortgage payments he had made on the two loans on the two properties with a letter stating he had not paid the correct amounts. However, plaintiff had paid the correct amount.

20.    On November 13, 2015, PHH sent plaintiff a statement showing escrow accounts were still associated with the loans and that plaintiff owed money to bring

the accounts up to date even though no escrow accounts should have been opened and no money was due.

21.    On November 16, 2015, plaintiff's insurance agent sent PHH proof of insurance. On the same day, PHH acknowledged receipt of proof of the insurance plaintiff had placed on the properties in December 2014. The letter stated plaintiff should disregard the letter it had previously sent to him.

22.    Throughout 2015, PHH's collectors called plaintiff on the telephone telling him he was behind in making his mortgage payments on the two properties. Each time plaintiff explained he was current on the properties. PHH collectors did so even though PHH knew, based on proof plaintiff had provided on many occasions, that he was not behind in making his mortgage payments.

23.    On November 23, 2015, plaintiff sent PHH a letter by certified mail that states PHH representatives were continuing to call him saying he owed money when in fact he was not behind in his payments. Plaintiff asked PHH to stop the collection calls. Plaintiff again enclosed proof of insurance. With the letter, he also returned the checks PHH had sent him.

24.    On December 7, 2015, PHH's office of the president, sent plaintiff a letter stating PHH would respond by December 18, 2015. However, plaintiff never received a response from the office of the PHH president.

25.    On December 8, 2015, PHH sent plaintiff a letter stating he owed money for his suspense accounts. On December 10, 2015, PHH sent plaintiff mortgage

statements stating the same thing. On December 12, 2015, and on December 22, 2015, PHH sent plaintiff stating his mortgages were "past due" and in default of the loan agreements.

26.    On January 4, 2016, PHH sent plaintiff a notice his payments on one of the loans was 34 days or more past due and the loan was in default, which was not accurate.

27.    On January 12, 2016, PHH sent plaintiff a letter that states his mortgage payments on one of the properties were past due, which was not accurate.

28.    In December 7, 2015, plaintiff sent dispute letters to Experian, Equifax, and Trans Union in which plaintiff explained that PHH's reports to those credit reporting agencies that he had been late in making payments on the loans on the two properties were inaccurate. Plaintiff enclosed proof he had made each of his mortgage payments on time and that he had insurance in force going back to December 2014.

29.    Upon receipt of plaintiff's dispute letters, each of the credit reporting agencies sent notice to PHH that plaintiff was disputing the information it was providing about the mortgage accounts.

30.    Upon receipt of the dispute letters, PHH was obligated to conduct a reasonable investigation and to report back to the agencies on the results of its investigation. However, PHH failed and refused to conduct reasonable investigations. Instead, PHH merely reported to the agencies that its credit reporting was correct.

31.    When PHH Mortgage transmitted the loan account information, it knew that the credit reporting agencies would sell the credit information to anyone who had a permissible purpose to obtain the credit information and who was willing to pay the agencies' fees. Such persons include banks, finance companies and others that are in the business of loaning money to consumers.

32.    Potential credit grantors that were considering extending credit to plaintiff sought and obtained plaintiff's credit reports from one or more of the credit reporting agencies.

33.    During the two years preceding the filing of the original complaint in this action, various credit grantors obtained plaintiff's credit reports, which included PHH's reports that plaintiff had been over 30 days late and that the accounts were past due.

34.    Each time a credit reporting agency sold a copy of plaintiff's credit reports to a potential credit grantor, plaintiff was damaged. Each such sale was a separate publication of PHH's inaccurate and misleading report that plaintiff had been late in making the mortgage payments.

35.    Credit scores are used by credit grantors to decide whether to extend credit. The credit scores are primarily based on the contents of the consumer's credit reports published by the CRAs.

36.    PHH has caused plaintiff damage by adversely affecting his credit scores and hence his ability to obtain credit. Due to PHH's inaccurate credit reporting, on

various occasions in 2015 and 2016, plaintiff was unable to refinance a loan on his personal residence, was unable to refinance loans on investment properties, and was unable to purchase additional properties for investment.

37.    PHH's inaccurate credit reporting has caused plaintiff severe emotional distress.

38.    On December 7, 2015, Equifax sent plaintiff the results of its reinvestigation, which were that PHH had verified its credit reporting was correct.

**Supplemental Complaint Allegations**

39.    This action was filed in the Superior Court on January 22, 2016. PHH answered the complaint on March 11, 2016.

40.    Even though PHH knew of this lawsuit, it willfully reported inaccurate information to the credit reporting agencies on multiple occasions in 2016.

41.    PHH inaccurately reported to the three national credit reporting agencies that plaintiff had been 30 days late on the loan with an account number ending in 6334 in March, April, May, September, October and November 2016.

42.    Each time PHH sent the inaccurate information to the agencies, plaintiff contacted PHH or its counsel to protest its illegal actions and to ask it to cease and desist. However, PHH continues to damage plaintiff's credit without any justification.

//

**First Claim: Violations of the California Consumer Credit Reporting Agencies Act, California Civil Code §§ 1785.25 (a) – Against PHH Mortgage Corporation**

43.    Plaintiff incorporates by reference ¶¶ 1-42.

44.    California Civil Code § 1785.25 (a) states that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

45.    PHH Mortgage negligently and willfully furnished information to the credit reporting agencies it knew or should have known was inaccurate, misleading, and incomplete.

46.    PHH failed to conduct a reasonable investigation as to whether its credit reporting was accurate, misleading or incomplete.

47.    Based on these violations of Civil Code § 1785.25 (a), plaintiff is entitled to the remedies afforded by Civil Code § 1785.31, including actual damages, attorney's fees, pain and suffering, injunctive relief, and punitive damages in an amount not less than $100 nor more than $5,000, for each violation as the Court deems proper.

**Second Claim: Violations of the Fair Credit Reporting Act—15 USC §1681s-2 (b)-- Against Defendant PHH Mortgage Corporation**

48.    The Fair Credit Reporting Act requires a furnisher, after receiving notice from a credit reporting agency that a consumer disputes information that is being reported by a furnisher, to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the

information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

49.    Within the last two years, PHH provided inaccurate, misleading and incomplete information to the defendant credit bureaus.

50.    PHH violated sections 1681n and 1681o by engaging in the following conduct that violates 15 U.S.C. § 1681s-2(b):

(a)    willfully and negligently failing to conduct investigations of the inaccurate information that plaintiff disputed;

(b)    willfully and negligently failed to review all relevant information concerning plaintiff's accounts;

(c)    willfully and negligently failing to report the results of investigations to the three credit reporting agencies;

(d)    willfully and negligently failing to report the inaccurate status of the inaccurate information to the three credit reporting agencies;

(e)    willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by the three credit bureaus concerning the inaccurate information disputed by plaintiff;

(f)    willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning plaintiff's accounts to the credit reporting agencies;

(g)    willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 USC § 1681s-s(b); and

51.    Because of the above-described violations of § 1681s-2(b), plaintiff has been damaged.

**Third Claim: Violations of the California Rosenthal Fair Debt Collection Practices Act Against Defendant PHH Mortgage Corporation**

52.    Plaintiff incorporates by reference ¶¶ 1-51.

53.    Plaintiff is a natural person from whom a debt collector sought to collect a consumer debt which was due and owing or alleged due and owing from Plaintiff, and is a "debtor" as that term is defined by California Civil Code §1788.2(h).

54.    The communications were "debt collections" as California Civil Code §1788.2(b) defines that phrase, and "initial communications" consistent with Cal. Civ. Code §1812.700(b).

55.    Defendant PHH, in the ordinary course of business, regularly, on behalf of itself, engages in debt collection as that term is defined by California Civil Code §1788.2(b), and therefore is a debt collector as that term is defined by California Civil Code §1788.2(c).

56.    The alleged obligations were money, property, or their equivalent, which is due or owing, or alleged to be due or owing, from a natural person to another

person and are therefore a "debt" as that term is defined by California Civil Code §1788.2(d).

57.    This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction.  As such, this action arises out of a consumer debt and "consumer credit" as those terms are defined by Cal. Civ. Code §1788.2(f).

58.    From January 2015 to date, PHH collectors called plaintiff using an automatic calling device during which calls the PHH collectors demanded payment even though the accounts were current. PHH called plaintiff 3,300 times in calendar year 2015, which averages to 9 calls a day! On the many occasions plaintiff answered the telephone call and engaged in conversation, plaintiff explained that he was not in default on the loans. PHH continued to make collection calls even though it had proof plaintiff was not in default as explained in this complaint.

59.    Each violation by defendant PHH was knowing, willful, and intentional, and PHH did not maintain procedures reasonably adapted to avoid any such violation.

60.    Through their conduct, defendant PHH used false representations or deceptive means to collect or attempt to collect a debt or to obtain information concerning a consumer defendants threatened to take action that cannot legally be taken or that is not intended to be taken.  Because this conduct violated 15 U.S.C. §1692e, 15 U.S.C. §1692e (10), 15 U.S.C. §1692e (5), 15 U.S.C. §1692f, and 15

U.S.C. §1692g of the FDCPA, these portions are incorporated by reference in the Rosenthal FDCPA, through California Code §1788.17, this conduct or omission violated Cal. Civ. Code §1788.17.

61.   Defendant PHH used the false representation that a legal proceeding has been, is about to be, or will be instituted unless payment of a consumer debt is made. Consequently, defendant PHH violated California Civil Code §1788.13(j).

62.   Defendant PHH did not maintain procedures reasonably adapted to avoid any such violations.

## PRAYER

WHEREFORE, plaintiff prays for judgment as follows:

On the First Claim:

    a.   Actual damages, including pain and suffering and punitive pursuant to California Civil Code § 1785.31 (a)

    b.   Injunctive relief pursuant to California Civil Code § 1785.31 (b);

    c.   Costs and attorney's fees pursuant to California Civil Code § 1785.31 (a).

On the Second Claim:

    d.   Actual and statutory damages;

    e.   Punitive damages:

On the Third Claim:

    f.   Actual and statutory damages;

On all Claims:

    g.   Attorney's fees and costs;

1     h.  For such other relief as the Court may deem proper.

2  Dated: January 25, 2017.

3
4                          ANDERSON, OGILVIE & BREWER LLP

5
6                          By    *Mark F. Anderson*
                                 Mark F. Anderson
7                                Attorney for Plaintiff

8
9                          DEMAND FOR JURY TRIAL

10        Plaintiff demands a trial by jury on all issues.

11
12  Dated: December 22, 2016.

13                          ANDERSON, OGILVIE & BREWER LLP

14
15                          By /s/ *Mark F. Anderson*
                                 Mark F. Anderson
16                               Attorney for Plaintiff

17
18
19
20
21
22
23
24
25
26
27
28